## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ARLING RUIZ, individually and on behalf of
all others similarly situated,

      Plaintiff,

  v.

THE MUSEUM OF SEX, LLC,

      Defendant.

Civil Action No.: 1:24-cv-00178-RA

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

David A. Cohen
Robert J. Basil
**The Basil Law Group, P.C.**
125 West 31st Street
Suite 19-B
New York, NY 10001
917-994-9973
*Attorneys for Defendant*
*The Museum of Sex, LLC*

## TABLE OF CONTENTS

Page

I.    Introduction ………………………………………………….………..1

II.   The Complaint…………..…………………….....................................................4

III.  The New York Arts & Cultural Affairs Law At Issue In This Case ……………5

IV.   Jurisdictional Facts …………………………………………………………7

V.    Legal Argument……………………………………………………………...9

      A. Motion to Dismiss Standard ……………………………………………...9

      B. The Court Must Dismiss Plaintiff's Action As
         The Complaint Fails To Allege Injury-In-Fact
         Sufficient To Demonstrate Standing Under
         Article III Of The Constitution Of The United States …………………..……… 10

         1.  Article III Standing Requirements After the Supreme
             Court's Ruling in *TransUnion v. Ramirez* …………………………………..10

         2.  The Complaint Fails to Allege Any Concrete
             Injuries Suffered by Plaintiff or Putative
             Class Members as a Result of Defendant's
             Alleged Statutory Violation …………………………………………………12

      C. Plaintiff Has Failed To Establish Subject Matter
         Jurisdiction Over This Case Under The
         Class Action Fairness Act …………………………………………………....14

         1.  Requirements For Establishing Jurisdiction Under CAFA …………………14

         2.  Plaintiff Cannot Sustain Her Burden of Demonstrating
             To A Reasonable Probability That the Aggregate Claims
             Of the Class Are in Excess of $5 Million …………………………………..15

VI.   Conclusion ………………………………………………………………18

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

Page

*Blockbuster, Inc. v. Galeno,*
    72 F.3d 53 (2d Cir. 2006) …………………………………………………14,15,18

*Calcano v. Swarovski N. Am. Ltd.,*
    36 F.4th 68 (2d Cir. 2022) ………………………………………………..12

*Colavito v. N.Y. Organ Donor Network, Inc.,*
    438 F.3d 214 (2d Cir. 2006) ………………………………………………15

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.,*
    790 F.3d 411 (2d Cir. 2015) …………………………………………..…9

*Hart v. Rick's NY Cabaret Int'l, Inc.,*
    967 F. Supp 2d 955 (S.D.N.Y. 2014) ……………………………………..15

*Harty v. West Point Realty, Inc.,*
    28 F.4th 435, 443 (2d Cir. 2022) …………………………………………10,14

*J.S. ex re. N.S. v. Attica Cent. Sch.,*
386 F.3d 107 (2d Cir. 2004) ………………………………………………10

*Maddox v. Bank of New York Mellon Trust Co., N.A.,*
    19 F.4th 58 (2d Cir. 2021) …………………………………………..…10,12

*Marsh & McLennan Cos., Inc.,*
    79 F.4th 276 (2d Cir. 2023) …………………………………...……………9

*Mattera v. Clear Channel Comm., Inc.,*
    239 F.R.D. 70 (S.D.N.Y. 2006) ……………………...……………….……14,15
*Metcalf v. Transperfect Translations Int'l, Inc.,*
    632 F. Supp. 3d 319 (S.D.N.Y. 2022) …………………….…………………11,12

*Morrison v. Nat'l Austl. Bank Ltd.,*
547 F.3d 167 (2d Cir. 2008) ………………………………………………10

*SM Kids, LLC v. Google LLC,*
    963 F.3d 206 (2d Cir. 2020) …………………………………………..9,10

*Sorrentino v. ASN Roosevelt Center, LLC,*
    588 F. Supp. 2d 350 (S.D.N.Y. 2008) ……………………………………………14,15

*TramsUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ……………………………………….……………2,10-14

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,*
    215 F.3d 247 (2d Cir. 2000) …………………………………….………………10
.

## **<u>Statutes</u>**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ………………………….……..1,14

NY Arts and Cultural Affairs Law, § 25.07(4) …………………………1,3-6,12,14,16,17

NY Arts and Cultural Affairs Law, § 25.33 ……………………………………6,15

NY Arts and Cultural Affairs Law, § 25.29(a) ……………………………...……..6

NY Arts and Cultural Affairs Law, § 25.29(a)(1) …………….…………………6,7,12,14

## **<u>Constitution</u>**

U.S. Const. Art. III …………………………………………………...…1,2,4,9,10-14

## **<u>Rules</u>**

Fed. R. Civ. P. 12(b)(1) …………………………………………..……………1,9,10

Fed. R. Evid. 201 ……………………………………………….…………………16

I.     **Introduction**

Plaintiff Arling Ruiz filed this class action suit against Defendant, The Museum of Sex, LLC ("the MOS"), on January 9, 2024.  The MOS, through its counsel, moves to dismiss Plaintiff's action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Defendant's motion is two-fold.  First, Defendant submits that Plaintiff and members of the putative class lack standing under Article III of the Constitution of the United States to pursue their claims.  Second, Defendant asserts that Plaintiff has not met her burden that this action has met the $5 million minimum amount in controversy required for subject matter jurisdiction under the Class Action Fairness Act ("CAFA"); 28 U.S.C. § 1332(d).

The Complaint alleges that the MOS violated New York Arts & Cultural Affairs Law § 25.07(4), which requires that any service charges be disclosed prior to the customer's selection of the ticket and that the amount of the service charge be disclosed in a clear and conspicuous manner prior to the customer's purchase of the ticket.  The MOS charged a $4 service charge for each ticket purchased through its website during the period at issue.

According to the Complaint, Ms. Ruiz purchased two tickets to the MOS through the museum's website on October 22, 2022.  The Complaint then, through a series of screenshots of the MOS' website on January 10, 2024, illustrates what purports to be the webpages Ms. Ruiz viewed when purchasing her tickets.  While the $4 service charge was not disclosed prior to Plaintiff's selection of the ticket, the Complaint admits that the $4 per ticket service charge was disclosed to Ms. Ruiz on the museum's website prior to her purchase of the tickets.

Plaintiff seeks the certification of a nationwide class and an award of more than $5 million in class-wide damages.  These damages are not based upon allegations of actual harm, but instead are the product of a cumulation of successive  applications of $50.00 statutory damages provision in the statute.

Notably, prior to the purchase of her tickets, Ms. Ruiz knew that the MOS was going to charge her a $4 per ticket service fee.  Ms. Ruiz went ahead and purchased the tickets with the knowledge of the service charge.

The Complaint is remarkable in that it lacks any allegations of any concrete harm suffered by Ms. Ruiz or any putative class member.  Indeed, the sole allegations of harm are that the Plaintiff and potential class members were "harmed" by paying the service charge because the service charge was not disclosed to Plaintiff at the beginning of the purchase process, and because the service charge was not clearly and conspicuously disclosed on the final checkout page, when in fact it was clearly indicated before purchase in an order summary.

Notably absent is any allegation that the Plaintiff or any putative class member suffered a concrete injury in fact, as required by the Supreme Court in its decision in *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021).  A "concrete" harm is something with at least a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or other various intangible harms."

 Plaintiff's claims fall into the category of an "informational injury."   An "informational injury" absent any actual "adverse effects" cannot satisfy the concrete-harm requirement.  The Complaint lacks any allegation of concrete harm.  Thus, the Court should find that Plaintiff and putative members the class lack standing under Article III to assert their claims in this Court.

Defendant also moves independently to dismiss based upon Plaintiff's failure to demonstrate, to a reasonable probability, that the aggregate claims of the plaintiff class are in excess of $5 million.

Here, Defendant retained a third-party vendor to conduct an analysis of its websites that were used by the museum to sell tickets beginning on August 29, 2022, the effective date of §

2

25.07(4), through January 9, 2024, when the complaint was filed.

The results of this analysis are contained in the accompanying declaration of Daniel Reynolds.  According to Mr. Reynolds, the MOS used two websites during the relevant period.  The first website, the legacy website, was used for most of the period at issue, including during October 2022, when Plaintiff alleges she purchased tickets to the MOS.  Screenshots from the legacy website demonstrate that the sale of tickets through this website were entirely compliant with § 25.07(4).

An updated website was implemented beginning in August 2023.  The Complaint contains screenshots of Defendant's webpages that Ms. Ruiz allegedly used to purchase her tickets in October 2022.  Mr. Reynolds concluded that the screenshots in the Complaint were of the new web site, not the legacy website that Ms. Ruiz used to purchase her tickets.  In any case, the screenshots in the Complaint make clear that Plaintiff knew she was being charged a $4 service charge per ticket before she purchased the tickets.

Mr. Reynolds examined the issue of how many tickets were sold under each version of the Defendants' website.  Notably, most of the sales were conducted through the legacy website.  Given that these tickets were sold through the compliant legacy website, the tickets sold are not subject to the $50 statutory award and thus cannot be considered in the jurisdictional amount in controversy.

Only 12,573 tickets were sold on the updated website, which is the only website complained of in the Complaint.  Statutory damages of $50.00 for 12,573 tickets would total only $628,650, far less than the $5 million jurisdictional minimum.  The Court should find that Plaintiff has not demonstrated, to a reasonable probability, that the aggregate claims of the proposed class are in excess of $5 million.

In summary, the Court should grant Defendant's motion to dismiss this action for lack of subject matter jurisdiction based upon Plaintiff's and individual class member's lack of standing under Article III and also because Plaintiff has not met her burden to prove the $5 million amount in controversy required for this Court to exercise jurisdiction under CAFA.

## II.     The Complaint

Plaintiff filed her Complaint against the MOS on January 9, 2024.  Ms. Ruiz's claims are brought solely under the NY Arts and Cultural Affairs Law § 25.07(4).  In her Complaint, Plaintiff alleges that Defendant violated that statute and that she is thus entitled to relief.

In the Complaint's class action allegations, Plaintiff alleges that common issues of law and fact include: "(a) whether Defendant failed to disclose the total cost of the ticket, including ancillary fees, prior to the tickets being selected for purchase in violation of NY Arts & Cultural Affairs Law § 25.07(4); (b) whether the displayed price of Defendant's tickets increases during the purchase process in NY Arts & Cultural Affairs Law § 25.07(4) and (c) whether Defendant failed to disclose its service charge in a clear and conspicuous manner in violation of NY Arts & Cultural Affairs Law § 25.07(4)."  Complaint, ¶ 22.

The Complaint alleges that Ms. Ruiz purchased two admission tickets to the MOS on or about October 22, 2022.  Complaint, ¶ 8.  The Complaint then alleges that "[t]he transaction flow process she viewed on Defendant's website was substantially similar as that depicted in Figures 1 through 6 of the Complaint.  *Id.*

Figure 6, which appears on page 8 of the Complaint titled "NYC Checkout" and contains an "Order Summary for Wed. Jan. 10, 2024."  Complaint, ¶ 16.  The Order Summary itemizes the following charges:

    Basic Ticket - $36.00
    Taxes & Fees - $7.55
    Service Charge ($4/ticket) - $4.00

4

Tax - $3.55
Total - $43.55

Thus, the Complaint demonstrates that the $4 service charge was disclosed to Plaintiff before she paid for her tickets.

In its class action allegations, the Complaint alleges that the claims of the named Plaintiff are typical of the claims of the putative class members in that Ms. Ruiz and all potential class members "sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's service charges, throughout the online ticket process." *Id.* at ¶ 23.  With regard to putative class members, the Complaint alleges that Defendant "is liable for a minimum of fifty dollars in statutory damages for each ticket sold."  Complaint, ¶ 5.

Count I of the Complaint, the only count in the Complaint, is styled as "New York Arts & Cultural Affairs Law § 25.07."  The Complaint alleges, in this Count, that "Plaintiff was harmed by paying this service charge, even though that total cost was not disclosed to Plaintiff at the beginning of the purchase process, and therefore, is unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4)."  Complaint, ¶ 33.  Plaintiff also alleges that she "was also harmed by paying the service charge, even though it was not clearly and conspicuously disclosed on the final checkout page, and therefore, is unlawful pursuant to [§ 25.07(4)]."  Complaint, ¶ 34.

### III.    The New York Arts & Cultural Affairs Law At Issue In This Case

Plaintiff's claim is based solely on the New York Arts & Cultural Affairs Law.  The Complaint cites two provisions of that statute.  The first provision cited in the Complaint is § 25.07(4), which provides:

> Every operator or operator's agent of a place of entertainment, any
> licensee or other ticket reseller, or platform that facilitates the sale
> or resale of tickets shall disclose the total cost of the ticket, inclusive

of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser. Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase. Disclosures of subtotals, fees, charges, and any other component of the total price shall not be false or misleading, and may not be presented more prominently or in the same or larger size as the total price. The price of the ticket shall not increase during the purchase process, excluding reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor. Nothing in this subdivision shall be construed to nullify, expand, restrict, or otherwise amend or modify now existing laws or regulations outside of this article, and nothing in this subdivision shall be construed as making lawful any fraudulent, deceptive, or illegal act or practice that is unlawful pursuant to now existing laws or regulations.

The second provision cited in the Complaint is § 25.33, which states, in relevant part: "[A]ny person who has been injured by reason of a violation of this chapter article may bring an action in his or her own name to enjoin such unlawful act, and action to recover his or her actual damages, whichever is greater, or both such actions."

Absent from the Complaint is § 25.29, which is part of Article 25, and is titled "Unlawful charges in connection with tickets." § 25.29(1) provides:

No operator of any place of entertainment, or his or her agent, representative, employee or licensee shall, if a price be charged for admission thereto, exact, demand, accept or receive, directly or indirectly, any premium or price in excess of the established price plus lawful taxes whether designated as price, gratuity or otherwise; provided, however: (a) nothing in this article shall be construed to prohibit a reasonable service charge by the operator or agents of the operator for special services, including but not limited to, sales away from the box office, credit card sales or delivery; and (b) nothing in this article shall be construed to prohibit an operator or its agent from offering for initial sale tickets by means of an auction.

Notably, § 25.29(1)(a), provides that "Nothing in this article shall be construed to prohibit a reasonable service charge by the operator or agents of the operator for special services,

including but not limited to, sales away from the box office, credit card sales or delivery." (Emphasis added.)  Here, the MOS charged a reasonable service fee of $4 for sales of tickets on its website, which is encompassed within the term "sales away from the box office."

## IV.   Jurisdictional Facts

Defendant retained Daniel Reynolds, the CEO of We Build Databases, which is headquartered in Washington, Michigan, to perform a forensic analysis of Defendant's website. *See* Declaration of Daniel Reynolds ("Reynolds Dec.") at ¶¶1-2.   We Build Databases is a custom database and software company that performs technical architecture and consulting, ESI services, data and file management services, and creating bespoke software and database applications for our clients.  *Id.* at ¶3.

The MOS had two websites that were utilized during the period from August 29, 2022, through January 9, 2024.  Reynolds Dec. at ¶6.  Mr. Reynolds and his team reviewed the archived data from the legacy website and were able to determine that the legacy website covered transactions from August 29, 2022 to August 20, 2023.  *Id.* at ¶9.  Given that Ms. Ruiz claims that she bought her tickets on October 22, 2022, she purchased her tickets on the legacy website.

The Complaint alleges that Ms. Ruiz purchased a ticket from the MOS website on October 6, 2022, and that "The transaction flow process she viewed on Defendant's website was similar as that depicted in Figures 1 through 6 of this complaint."  Complaint, ¶8.  According to Mr. Reynolds, the layout of the legacy website was substantially different from the website used during January 2024.  Reynolds Dec. at ¶¶11-13.  Mr. Reynolds concluded that the Plaintiff took screenshots of the updated web site, not the legacy website, which was not used during January 2024.  *Id.* at ¶13.

The screenshots of the MOS website that appear in the complaint at pages four through eight of the Complaint do not contain any screenshots of the legacy website, which is the website version available to Ms. Ruiz if she were to purchase a ticket during October 2022.  Reynolds Dec. at ¶¶14-15,

The legacy website had a different layout than the new website.  It did not contain any photographs.  A customer seeking to purchase a ticket on the legacy website would initiate the purchase of a ticket on the webpage, titled "Museum Admission."  At the bottom left corner of the web page contains the following notice: "There is a $4 service charge for each ticket sold online." The $4 service fee disclosure is on the same webpage where the customer is asked to select the number of tickets at the cost of $36 per ticket.  Reynolds Dec. at ¶¶ 6-19..  Disclosing the amount of the service fee before the customer selects the ticket is complaint with NY Arts and Cultural Law §25.07(4).

When the customer using the legacy website clicked the "Continue" button a web pop-up appears containing additional information.  The pop-up provided additional information and policies of the MOS.  The pop-up also stated: "There is a $4 service charge for each ticket sold online."  Reynolds Dec. at ¶21.

If the legacy website customer clicked the "Continue" button he or she was sent to the second page, which provided the total amount due, $40 for one ticket.  The webpage also disclosed a "Convenience Fee" for "1 ticket(s) x $4.00 = $4.00."  Reynolds Dec. at ¶23.

In summary, the $4 fee was disclosed on the legacy website separately three times prior to the customer actually paying for the ticket.  *Id.* at ¶25.  In addition, the $4 fee was disclosed in the total amount to be charged before the customer actually purchased the ticket, consistent with NY Arts and Cultural Law § 25.07.

Mr. Reynolds also reviewed the two websites to determine the number of tickets sold through each.  He queried each of the databases to identify service fees for the time periods requested, which was from August 21, 2022 through January 15, 2024.  Reynolds Dec. at ¶26.

The legacy database contains  data from August 21, 2022 through August 20, 2023. During that period of time, 92,761 tickets were sold through the legacy website.  Each of those tickets were charged a $4 fee.  *Id.* at ¶27.  The updated database was in use from August 21, 2023 through January 15, 2024. During that period of time, 12,573 tickets were sold through the updated website.  Each of those tickets were charged a $4 fee.  *Id.* at ¶28.

## V.    Legal Argument

### A.  Motion to Dismiss Standard

Defendant moves to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure on two distinct grounds.  First, Defendant submits that Plaintiff and members of the putative class lack Article III standing to pursue their claims.  Second, Defendant argues that Plaintiff has not met her burden to prove the $5 million in controversy for subject matter jurisdiction under CAFA.

"A district court properly dismisses an action under [Rule] 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . ." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.,* 790 F.3d 411, 416-17 (2d Cir. 2015) (internal quotation omitted).

The Court first considers whether Plaintiff has established Article III standing.  *Bojnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 282 (2d Cir. 2023).  "A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court, and, accordingly, is brought under [Rule] 12(b)(1)."  *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210

(2d Cir. 2020).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008).

On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff.  *J.S. ex re. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

**B.   The Court Must Dismiss Plaintiff's Action As The Complaint Fails To Allege Injury-In-Fact Sufficient To Demonstrate Standing Under Article III Of The Constitution Of The United States**

1.   Article III Standing Requirements after the Supreme Court's Ruling in *TransUnion v. Ramirez*

The Second Circuit recently acknowledged that "the Supreme Cout clarified that a plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm beyond the statutory violation itself."  *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) (citing *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021).

The impact and clarity of the Court's decision in *TransUnion* cannot be overstated.  "'No concrete harm; no standing.'  This equation, which opens the Supreme Court's *TransUnion* decision leaves little room for interpretation . . ."  *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021).  The *TransUnion* Court "considered the characteristics that make a harm 'concrete' for purposes of Article III."  *Maddox,* 19 F.4th at 63.  The Supreme Court

explained that whether a harm qualifies as "concrete" hinges on "whether the alleged injury to the plaintiff has a close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417.

Article III of the U.S. Constitution confines the judicial power of the federal courts to cases where the plaintiff shows that she suffered a concrete injury in fact. *TransUnion,* 594 U.S. at 424.  In *TransUnion*, the Supreme Court considered whether plaintiffs and putative class members had standing to bring claims against a credit reporting service agency for violating the Fair Credit Reporting Act, including a specific requirement to send certain mailings in a specified format.

The *TransUnion* Court held that a plaintiff cannot rely on the fact that the defendant committed a statutory violation: an "injury in law" does not amount to an "injury in fact" for purposes of Article III standing.  *Id.* at 427.  Rather, a "concrete" harm is something with at least a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or other various intangible harms." *Id.* at 425.  An "informational injury" absent any actual "adverse effects" cannot satisfy the concrete-harm requirement for a claim of damages.  *Id.* at 442.  Such adverse harm must be pleaded in the Complaint.  *Metcalf v. Transperfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 339 (S.D.N.Y. 2022)

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion*, 594 U.S. at 426.  In *TransUnion*, the Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.* "At the motion to dismiss stage, the plaintiff 'bears the burden of alleging facts affirmatively and

plausibly suggest' they have standing." *Metcalf*, 632 F. Supp. 3d at 339 (quoting *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022). However, the plaintiff still "bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Calcano*, 36 F.4th 68, 75 (internal quotation omitted).

According to the Second Circuit, plaintiff "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox v. Bank of New York Mellon Trust Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021). "Accordingly, to state a viable claim for statutory violations, the complaint must provide factually specific, non-conclusory allegations that they suffered a concrete harm as a result of the violations." *Metcalf*, 632 F. Supp. 3d at 340.

  2. <u>The Complaint Fails To Allege Any Concrete Injuries Suffered By Plaintiff Or Putative Class Members As A Result Of Defendant's Alleged Statutory Violation</u>

This case fits squarely within the rubric of an "informational injury" analysis under *TransUnion*. Notably, the New York Arts and Cultural Affairs Law § 25.29(1)(a), provides that "nothing in this article shall be construed to prohibit a reasonable service charge by the operator agents of the operator for special services, including but not limited to, sales away from the box office, credit card sales or delivery." The plain language of § 25.29(1)(a) allows Defendant to charge a $4 service fee for ticket purchases made through its website.

Given that the New York Arts and Cultural Affairs statute does "not prohibit" the Defendant's $4 service fee, Plaintiff's claim is limited to the assertion that the fee was not adequately disclosed as required by the statute. Thus, Plaintiff's claim is solely that of an "informational injury" caused by Defendant's alleged failure to strictly comply with § 25.07(4).

Ms. Ruiz admits in the Complaint that she did, in fact, see the $4 service charge prior to purchasing the ticket. Her complaint is that the $4 fee was not disclosed prior to her selecting

the ticket at the beginning of the on-line purchase transaction, and that the fee was not disclosed in a clear and conspicuous manner.

There are no allegations in the Complaint even suggesting that Ms. Ruiz suffered any suffered a concrete injury in this case.  The Complaint's "Relevant Factual Allegations" section fails to allege <u>any</u> harm suffered by the Plaintiff resulting from Defendant's alleged violations of the statute.

Instead, the Complaint makes conclusory allegations that "the named Plaintiff and the Nationwide Class . . . sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's service charges, throughout the online ticket purchase process."  Complaint, ¶ 23.

As the *TransUnion* Court explained, whether a harm qualifies as "concrete" hinges on "whether the alleged injury to the plaintiff has a close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts."  *TransUnion*, 594 U.S. at 425. Here, the Complaint fails to allege that Plaintiff or any putative class member suffered any "traditional harm" including any physical harm, economic harm, or various intangible harms such as reputational harm.  In addition, Plaintiff cannot demonstrate that the informational violation allegedly suffered by Plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit.  Nor does the Complaint plead enough facts to make it plausible that Plaintiff and individual class members did indeed suffer the sort of injury that would entitle them to relief.

In an informational injury case, such as the case at bar, the plaintiff must identify "downstream consequences from failing to receive the required information " because "informational injury that causes no adverse effects cannot satisfy Article III." *TransUnion*, 594

U.S. at 441.  Moreover, the plaintiff must show that she has an interest in using the information "beyond bringing [a] lawsuit."  *Harty*, 28 F.4th at 435.  Here, the Complaint makes no allegations of any "downstream consequences" suffered by either Ms. Ruiz or any putative class member.

Plaintiff may argue that the payment of an "illegal fee" confers Article III standing. According to this argument, the $4 service Plaintiff paid when purchasing her ticket was an illegal fee because the disclosure of the fee allegedly violated NY Arts & Cultural Affairs Law § 25.07(4).  However, as discussed above, Defendant's $4 service fee is lawful pursuant to § 25.29(a)(1) of the same New York statute.  It cannot be deemed "illegal."

Plaintiff has failed to allege facts demonstrating that she, or any putative class member, suffered a concrete injury in this case.  The Court should find that Plaintiff and putative class members lack standing to bring suit in this case under Article III of the Constitution.

### C.  Plaintiff Has Failed To Establish Subject Matter Jurisdiction Over This Case Under The Class Action Fairness Act

#### 1.  Requirements For Establishing Jurisdiction Under CAFA

CAFA vested federal district courts with diversity jurisdiction over class actions where (1) there is minimal diversity, *i.e.*, at least one plaintiff and one defendant are citizens of different states; (2) the proposed class contains at least 100 members; and (3) the amount in controversy is at least $5 million in the aggregate, exclusive of fees and costs.  28 U.S.C § 1332(d); *Blockbuster, Inc. v. Galeno*, 72 F.3d 53, 56 (2d Cir. 2006).

"The Second Circuit has made clear that the party asserting federal jurisdiction under CAFA bears the burden of establishing jurisdiction."  *Sorrentino v. ASN Roosevelt Center, LLC*, 588 F. Supp. 2d 350, 353 (S.D.N.Y. 2008).  The Court must construe all ambiguities and draw all reasonable inferences in favor of the party asserting jurisdiction.  *Mattera v. Clear Channel*

*Comm., Inc.*, 239 F.R.D. 70, 78 (S.D.N.Y. 2006).  Where, as in this case, "plaintiffs, as the party

seeking to assert federal jurisdiction, bear the burden of establishing CAFA jurisdiction."  *Hart v.*

*Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp 2d 955, 960 (S.D.N.Y. 2014).

Where the jurisdictional $5 million amount in controversy is challenged, plaintiffs must

show "that it appears to a reasonable probability that the aggregate claims of the plaintiff class

are in excess of $5 million."  *Blockbuster*, 72 F.3d at 58 (citation omitted).  In satisfying the

"reasonable probability" burden, there is "a rebuttable presumption that the face of the complaint

is a good faith representation of the actual amount in controversy."  *Colavito v. N.Y. Organ*

*Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

"To rebut this presumption, defendants 'must show that the complaint was so patently

deficient as to reflect to a legal certainty that the plaintiff could not recover the amount alleged or

that the damages alleged were feigned to satisfy jurisdictional minimums.'"  *Hart*, 967 F. Supp

2d at 961 (quoting *Colavito*, 438 F.3d at 221).  Facts relating to the jurisdictional amount can be

challenged, requiring the party claiming jurisdiction "to support those facts with a 'competent

proof' by a preponderance of the evidence."  *Sorrentino*, 588 F. Supp. 2d at 354.

2. Plaintiff Cannot Sustain Her Burden Of Demonstrating To A Reasonable
   Probability That The Aggregate Claims Of The Class Are In Excess Of $5
   Million.

Plaintiff claims that the $5 million jurisdictional requirement under CAFA is met because,

"on information and belief" members of the putative class "are least in the hundreds of

thousands."  Complaint, ¶21.  NY Arts & Cultural Affairs Law § 25.33 provides that "any person

who has been injured by reason of a violation of this article" may "recover his or her actual

damages or fifty dollars, whichever is greater."  Here, Plaintiff asserts that the aggregate of the

$50.00 statutory damages imposed per class member will exceed $5 million.  In order to satisfy

her burden, Plaintiff must demonstrate that at least 100,000 tickets were sold through the MOS website and that each ticket sold violated the requirement of § 25.07(4).

The Complaint cites a *Wall Street Journal* article from June 15, 2017, claiming that more than 300,000 people visited the MOS.  Complaint, ¶21.  To the extent Plaintiff is seeking to use the newspaper article as an adjudicative fact, Plaintiff has failed to request that the Court take notice of an adjudicative fact pursuant to Fed. R. Evid. 201.  Further, even if the Court were to take judicial notice of the article, it has no relevance to this case as the article was published in 2017, five years before the effective date of § 25.07(4).

Defendant can demonstrate that the Complaint is so patently deficient that Plaintiff could not recover the $5 million in damages alleged in the Complaint.  The Complaint was patently deficient by making allegations that Ms. Ruiz purchased two tickets through the MOS website on October 22, 2022, and alleging that screenshots of the website in October 2022 were the same as those contained in the Complaint.

According to the Complaint, Ms. Ruiz purchased two tickets from the MOS website on October 22, 2022, and that "The transaction flow process she viewed on Defendant's website was similar as that depicted in Figures 1 through 6 of this complaint."  Complaint, ¶8.  This allegation is patently false.

As described in Mr. Reynolds' declaration, The screenshots in Figures 1 through 6 of the Complaint were screenshots of a website that was not in existence when Plaintiff allegedly purchased a ticket to the MOS on October 6, 2022.  As stated in Defendant's jurisdictional facts section, the MOS had two websites that were utilized during the period from August 22, 2022,

through January 15, 2024.[1]  The first website, the legacy website, was used for transactions from August 22, 2022, through August 20, 2023.   Mr. Reynolds concluded that the Plaintiff took screenshots of the new web site, not the legacy website, which was not used during January 2024.

The layout of the legacy website was substantially different from the website used during January 2024.  Notably, the complaint does not contain any screenshots of the legacy website, which is the only website Ms. Ruiz could have to buy tickets during October 2022.

More importantly, the screenshots of the legacy website demonstrate that Defendant complied with § 25.07(4) by disclosing the $4 service in a clear and conspicuous manner, disclosing the fee prior to the selection of the ticket for purchase, and disclosing the $4 fee and total cost of the ticket prior to the ticket being selected for purchase.

A total of 105,334 tickets were sold during the period from August 22, 2022, through January 15, 2024.  During that period, 92,761 tickets were sold through the legacy website. Given that these tickets were sold through the compliant legacy website, the tickets sold are not subject to the $50.00 statutory award and thus cannot be considered in the jurisdictional amount in controversy.

Only 12,573 tickets were sold through the updated website from August 21, 2023, through January 14, 2024.  Statutory damages of $50.00 for 12,573 tickets would total only $628,650, far less than the $5 million jurisdictional minimum.

The Second Circuit has held that when the jurisdictional $5 million amount in controversy is challenged, plaintiffs must show "that it appears to a reasonable probability that

---

[1] The effective date of § 25.07 was August 29, 2022.  The subject matter jurisdiction of this Court is determined as of the date the complaint was filed, which in this case was January 9, 2024.

the aggregate claims of the plaintiff class are in excess of $5 million." *Blockbuster*, 72 F.3d at 58

Based upon the analysis performed by Mr. Reynolds, Plaintiff cannot show to a "reasonable

probability" that the aggregate claims of the class are in excess of $5 million.

Accordingly, the Court should find that Plaintiff has not satisfied her burden that the

Court has subject matter jurisdiction under CAFA.

## VI.    Conclusion

For the reasons stated above, The Museum of Sex, LLC respectfully requests that the

Court grant Defendant's motion to dismiss Plaintiff's action, in its entirety, for lack of subject

matter jurisdiction.

Respectfully submitted,

**THE BASIL LAW GROUP, P.C.**

/s/ David A. Cohen
David A. Cohen
Robert J. Basil
THE BASIL LAW GROUP, P.C.
125 West 31st Street, #19-B
New York, NY 10001
(917) 994-9973
davidacohen@rjbasil.com
robertjbasil@rjbasil.com

Dated: March 7, 2024
        New York, New York